834 F.2d 930
 45 Fair Empl.Prac.Cas. 959,
45 Empl. Prac. Dec. P 37,695,
107 Lab.Cas. P 35,004, 9 Fed.R.Serv.3d 1092
 Luellen R. McKENZIE, Plaintiff-Appellant,
v.
DAVENPORT-HARRIS FUNERAL HOME, a division of Protective
Industrial Insurance company; and Protective
Industrial Insurance Company,
Defendants-Appellees.
Luellen R. McKENZIE, Plaintiff-Appellant,
v.
DAVENPORT-HARRIS FUNERAL HOME, a division of Protective
Industrial Insurance Company, Defendants-Appellees,
Protective Industrial Insurance Company, Defendant.
 Nos. 86-7888, 87-7161.
 United States Court of Appeals,
Eleventh Circuit.
 Dec. 21, 1987.
 
 Robert L. Wiggins, Jr., Ann K. Norton, Melinda L. Denham, Gordon, Silberman, Wiggins, and Childs, Birmingham, Ala., for plaintiff-appellant.
 Demetrius C. Newton, Birmingham, Ala., for defendants-appellees.
 Appeals from the United States District Court for the Northern District of Alabama.
 Before VANCE and CLARK, Circuit Judges, and GARZA*, Senior circuit judge.
 GARZA, Senior Circuit Judge:
 
 
 1
 A woman filed a Title VII claim and an Equal Pay Act claim against her former employers. She alleged that she was discriminated against on the basis of her sex. The district court granted the defendants' motion for summary judgment on the Title VII claim. The court held that the woman's second employer did not maintain the jurisdictional number of 15 employees, and that the businesses could not be considered a single or joint employer for Title VII purposes. Further, the court dismissed the plaintiff's Equal Pay Act claim, with prejudice, on the basis that her counsel failed to comply with the court's scheduling order.
 
 I. Facts and Proceedings
 
 2
 Luellen R. McKenzie, plaintiff-appellant, was hired by Protective Industrial Insurance Company (Protective) in 1957. She worked at Protective for about twenty years as an insurance agent. Although there is some confusion as to whether she quit or was transferred, in 1977 she began working for Davenport-Harris Funeral Home (Davenport-Harris). While at Davenport-Harris, McKenzie worked as a receptionist and bookkeeper, but retained her capacity as an insurance agent, and continued to do a minimal amount of insurance work for Protective.
 
 
 3
 Virgil Harris is the President of both Protective and Davenport-Harris. He owns a small percentage of the outstanding stock of both companies.[1] He also, in large part, controlled the personnel management of both companies.
 
 
 4
 Paul Harris is the Secretary of both Protective and Davenport-Harris, and also serves as Vice-President of Protective. The books of Protective and Davenport-Harris, including receipts and salary records, are maintained by Paul Harris at Protective's offices. The salary checks for Davenport-Harris employees are issued from Protective.
 
 
 5
 In 1984, McKenzie was laid off. Virgil Harris, while in his office at Protective, telephoned Winfield Simpson at Davenport-Harris, and ordered him to give the bad news to McKenzie. Virgil Harris released her because of a claimed lack of business, despite his perception of McKenzie as providing 27 years of good service. Less than one month after her termination from employment, a man was hired at a higher salary to replace her.
 
 
 6
 In response, McKenzie filed a discrimination charge with the Equal Employment Opportunity Commission (EEOC). After receiving notice of right to sue from the EEOC, McKenzie brought suit against Protective and Davenport-Harris, alleging violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Secs. 2000e, et seq., and the Equal Pay Act of 1963. The main obstacle to her Title VII claim was that Davenport-Harris did not employ the requisite 15 employees to be subject to Title VII. To establish jurisdiction for the Title VII action, it was incumbent upon McKenzie to show a substantial relationship between Protective and Davenport-Harris. Protective retains approximately 200 employees. Accordingly, she could receive Title VII relief if the companies could be considered a single or joint employer under 42 U.S.C. Sec. 2000e(b).
 
 
 7
 The defendants filed a motion for summary judgment, stating that Protective and Davenport-Harris are separate corporate entities, and thus the threshold requirement of 15 employees was not met for Title VII purposes. The defendants further argued that McKenzie was not employed by Protective. Affidavits were filed in opposition to the defendants' motion.
 
 
 8
 The district court granted a partial summary judgment directed at the Title VII claim. The court determined that the businesses were separate entities:[T]here is no dispute that Davenport and Protective are separate corporate entities although there is substantial similarity in their corporate officers and in their directors, as well as a common business interest. The ownership of the two corporations, in effect, is also quite similar. The depositions before the court, however, establish without dispute that their assets are not interchangeable and that there is no co-use of the assets by the two corporations. Further, it is established that there are no similarities with regard to their operations, although there is a significant degree of interrelationship.
 
 
 9
 The partial summary judgment did not affect the Equal Pay Act claim. McKenzie filed a notice of appeal.
 
 
 10
 The defendants filed a motion to dismiss the remaining claim under the Equal Pay Act. They claimed that McKenzie failed to comply with paragraph 7(a) of the pre-trial order. Paragraph 7(a) required a statement of the principal facts which the plaintiff intended to prove at trial. The court entered an order on December 19, 1986, requiring the plaintiff to comply with the pre-trial order by December 23. On December 23, McKenzie sent the court a letter reciting that the parties had reached an agreement on the claim, and that they were in the process of filing the necessary papers with the court.
 
 
 11
 On December 29, the parties filed a stipulation of dismissal of the plaintiff's Equal Pay Act claim against Davenport-Harris, pursuant to Rule 41(a)(1)(ii). Fed.R.Civ.P. 41(a)(1)(ii). The parties disagree as to the intent of that stipulation. The plaintiff claims that the stipulation did not state that the dismissal was with prejudice, and thus, under Rule 41, was deemed to be without prejudice. The defendants argue that although the stipulation failed to state that the dismissal was with prejudice, the defendants believed that the dismissal was with prejudice.
 
 
 12
 On January 5, 1987, the district court entered an order dismissing the plaintiff's Equal Pay Act claim with prejudice. The plaintiff filed a motion to strike the court's order, contending that it was unauthorized under Rule 41. On February 17, the court issued another order stating that "[t]he dismissal with prejudice on January 5, 1987 was, while based upon the stipulation, in implementation of the sanction noticed by the December 19, 1986 order. Parties cannot circumvent sanctions through the device of a stipulation of dismissal." The plaintiff filed a timely notice of appeal, and the appeal was consolidated with the Title VII appeal filed earlier.
 
 II. Discussion
 
 13
 We face two issues in this appeal. We must first decide whether the district court erred in granting summary judgment in favor of the defendants on the Title VII claim. Our review of this matter is plenary. Summary judgment is proper only if the evidence produced by the non-moving party, when viewed in a light most favorable to that party, fails to establish a genuine issue of material fact. Tippens v. Celotex Corp., 805 F.2d 949, 953 (11th Cir.1986).
 
 
 14
 The second issue raised for review is whether the district court erred in dismissing with prejudice the Equal Pay Act claim. We must determine whether the trial judge acted within the proper scope of his discretion in dismissing the claim with prejudice. Our study of the record reveals that the district court should not have granted summary judgment for the defendants on the Title VII claim. Further, the judge abused his discretion in dismissing McKenzie's Equal Pay Act claim with prejudice. For the reasons that follow, we are compelled to reverse the final judgment of the district court on both grounds.
 
 A. The Title VII Claim
 
 15
 Of course, McKenzie must bear the burden of proving that subject matter jurisdiction exists. McKenzie's impediment to jurisdiction, at least with the district court, was that she could not establish that Davenport-Harris employed 15 or more employees for each working day in 20 or more weeks. Although there is some dispute, we will assume for purposes of this appeal that the district court did not make so obvious a mistake and that Davenport-Harris has at no time engaged as many as 15 employees at one time.[2]
 
 
 16
 A liberal construction must be accorded to the term: employer. Trevino v. Celanese Corp., 701 F.2d 397, 403 (5th Cir.1983); Baker v. Stuart Broadcasting Co., 560 F.2d 389, 391 (8th Cir.1977). McKenzie tried to prove to the trial court that Davenport-Harris' and Protective's activities, operations, ownership and management are sufficiently interrelated to be perceived as a single employer for purposes of Title VII. Counsel for the defendants contended that the separate corporate existence of Davenport-Harris and Protective could not be disregarded. Based on three depositions and a handful of exhibits alone, the district court judge determined that Protective could not be considered an employer of McKenzie. The court made this determination despite its finding that "there is substantial similarity in their corporate officers and in their directors, as well as a common business interest. The ownership of the two corporations, in effect, is also quite similar." The court also found that "there is a significant degree of interrelationship."
 
 
 17
 Our role is to decide whether McKenzie presented sufficient evidence to create a genuine issue concerning whether Davenport-Harris and Protective should be treated as a single entity. The predominant trend in determining whether two businesses should be treated as a single or joint employer under Sec. 2000e(b) is to apply the standards promulgated by the National Labor Relations Board (NLRB).[3] See Equal Employment Opportunity Comm'n v. Wooster Brush Co. Employees Relief Ass'n, 727 F.2d 566, 572 (6th Cir.1984); Childs v. Local 18, Int'l Bhd. of Elec. Workers, 719 F.2d 1379, 1382 (9th Cir.1983); Trevino, 701 F.2d at 404; Mas Marques v. Digital Equip. Corp., 637 F.2d 24, 27 (1st Cir.1980); Baker, 560 F.2d at 392; Fike v. Gold Kist, Inc., 514 F.Supp. 722, 726 (N.D.Ala.), aff'd, 664 F.2d 295 (11th Cir.1981). The NLRB factors include: (1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control. The showing required to warrant a finding of single employer status has been described as "highly integrated with respect to ownership and operations." Fike, 514 F.Supp. at 726.
 
 
 18
 While it would be premature on the basis of the record before this panel to conclude that Davenport-Harris and Protective are, in essence, a single employer, the evidence clearly raises a genuine issue of material fact. Even counsel for appellees conceded at oral argument that there was common ownership, and, to some extent, common management. Summary judgment was inappropriate because the evidence presented by McKenzie was substantial and is to be believed by law, and all justifiable inferences are to be drawn in her favor.
 
 
 19
 McKenzie presented evidence that the Harris family founded and owned Davenport-Harris and Protective. Davenport-Harris is a stock corporation, and the majority of its stock is owned by Protective. For the past twenty years, everyone that has owned stock in Davenport-Harris has also owned stock in Protective. Everyone owning stock in the companies are heirs of the founders of the companies.
 
 
 20
 Virgil Harris is the President of both companies. He also controlled personnel management of both companies. Paul Harris is the Secretary of both companies, as well as Vice-President of Protective. Both Davenport-Harris' and Protective's books and records are maintained by Paul Harris at Protective's offices. He issues the payroll checks for Davenport-Harris employees from Protective's offices. Additionally, all checks written for Davenport-Harris came from Protective, and had to be signed by Virgil or Paul Harris. All bills incurred by Davenport-Harris are paid at Protective's offices.
 
 
 21
 The close affiliation of the companies is also evidenced by their advertisement. They market the companies as twins to the public. Their brochure states that they are "twins in service." Customers who purchase Protective insurance are encouraged to utilize Davenport-Harris burial arrangements.
 
 
 22
 Further, McKenzie worked as an insurance agent for Protective while she worked at Davenport-Harris. She collected premiums and brought in new policies for Protective, and then someone from Protective would visit McKenzie at Davenport-Harris and take the money to Protective. Protective deducted social security, federal and state taxes from McKenzie's commission checks. This indicates that she was regarded as a saleswoman, and not merely as an independent contractor of Protective.
 
 
 23
 The district court went beyond the question of whether a genuine issue of material fact existed to the weighing of the parties' credibility. This was improper because making credibility choices between competing views of the evidence is inappropriate in summary judgment proceedings. "Ordinarily, summary disposition of Title VII cases is not favored, especially on a 'potentially inadequate factual presentation.' " Trevino, 701 F.2d at 407 (citations omitted). Based on the limited record before us, the NLRB factors to be applied in a case of this type, and viewing, as the district court was required to do, the evidence and inferences therefrom in a light most favorable to McKenzie, we reverse the district court's grant of summary judgment to Davenport-Harris and Protective on the issue of single employer status.
 
 B. The Equal Pay Act Claim
 
 24
 The district court's order, filed on December 19, 1986, required McKenzie to comply with paragraph 7(a) of the pre-trial order by December 23. Failure to comply would result in dismissal of the Equal Pay Act claim. On December 23, McKenzie's counsel sent a letter to the court stating that it had executed the necessary papers toward a settlement of the claim. All that remained was for the defendants' counsel to do the same. On December 29, the parties filed a stipulation of dismissal of McKenzie's claim against Davenport-Harris, pursuant to Rule 41(a)(1)(ii). The stipulation did not state that dismissal was with prejudice. Clearly, based on Rule 41, the stipulation of dismissal must be considered without prejudice because it was not expressly provided for in the document.
 
 
 25
 On January 5, 1987, the court entered an order dismissing McKenzie's Equal Pay Act claim with prejudice. In response to McKenzie's motion to strike, the court attempted to explain its actions in an order filed on February 17:
 
 
 26
 Plaintiff's position, however, overlooks the court's December 19, 1986 order. That order, responding to the December 18, 1986 motion of defendant, expressly told counsel for plaintiff that unless he complied by December 23, 1986 with an earlier order of the court not complied with, the cause would be dismissed. Counsel for plaintiff did not comply with the December 19, 1986 order or the earlier order to which it was addressed. The dismissal with prejudice on January 5, 1987 was, while based upon the stipulation, in implementation of the sanction noticed by the December 19, 1986 order. Parties cannot circumvent sanctions through the device of a stipulation of dismissal.
 
 
 27
 We fail to see how the plaintiff could have possibly violated the court's December 19 order. The court demanded action based on its pre-trial order by December 23. On that very day, the plaintiff notified the court that the action demanded of her would not be required because the claim had been settled. Thus, the parties' agreement made the court's order regarding compliance with the pre-trial order a nullity.
 
 
 28
 The stipulation of dismissal filed by the parties did not include the magic words: with prejudice. Under Rule 41(a)(1), where the stipulation does not state that the dismissal is with prejudice, it must be considered without prejudice. "If the parties can agree to terms, they are free to settle the litigation at any time, and the court need not and should not get involved." United States v. City of Miami, Florida, 614 F.2d 1322, 1330, (5th Cir.1980),modified on other grounds, 664 F.2d 435 (5th Cir.1981). The court was without authority on January 5, to sanction McKenzie or to dismiss the Equal Pay Act claim with prejudice.
 
 III. Conclusion
 
 29
 We find merit in both challenges presented by the appellant. The district court erred in granting summary judgment in favor of the defendants on the Title VII claim. The question of single employer status raises a genuine issue of material fact. Further, the court abused its discretion in dismissing the Equal Pay Act claim with prejudice. The stipulation of dismissal was filed without prejudice, and the court exceeded its authority in modifying the agreement in that manner.
 
 
 30
 REVERSED and REMANDED.
 
 
 
 *
 Honorable Reynaldo G. Garza, Senior U.S. Circuit Judge for the Fifth Circuit, sitting by designation
 
 
 [1]
 For the past twenty years, all the persons that have owned stock in Protective have also owned stock in Davenport-Harris. It should also be considered that Protective owns a majority of Davenport-Harris shares of stock
 
 
 [2]
 The appellant has raised the challenge that the district court ignored her second affidavit, stating that Davenport-Harris employed more than 15 employees
 
 
 [3]
 This standard was originally adopted by the Supreme Court in a labor relations context. Radio and Television Broadcast Technicians Local 1264 v. Broadcast Serv. of Mobile, Inc., 380 U.S. 255, 256, 85 S.Ct. 876, 877, 13 L.Ed.2d 789 (1965)